**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ISMAEL ALAMO,<br>     Plaintiff, | CIVIL ACTION NO.<br>3:18-CV-00210 (JCH) |
| v. | |
| NANCY E. BERRYHILL, ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY, U.S.A.,<br>     Defendant. | SEPTEMBER 3, 2019 |

**RULING RE: MOTION TO REVERSE THE COMMISSIONER'S DECISION (DOC. NO. 27)**

## I.   INTRODUCTION

Plaintiff Ismael Alamo ("Alamo") brings this action under title 42 section 405(g) of the United States Code, appealing from the final determination of the Commissioner of Social Security ("the Commissioner") denying his applications for disability insurance benefits and supplemental security income.  Motion to Reverse the Decision of the Commissioner ("Pl.'s Mot.") (Doc. No. 27).  The Commissioner cross-moves for an order affirming that decision.  Defendant's Motion to Affirm the Decision of the Commissioner ("Def.'s Mot.") (Doc. No. 28).

For the reasons set forth below, the Motion to Reverse the Decision of the Commissioner is **GRANTED**, and the Motion to Affirm the Decision of the Commissioner is **DENIED**.  The case is remanded to the ALJ for proceedings consistent with this decision.

## II.    BACKGROUND

A.    <u>Facts</u>

On August 18, 2012, Alamo was involved in a serious accident while riding an all-terrain vehicle.  Stipulation of Facts (Doc. 27-1) at 2.  Alamo was taken to Hartford Hospital where he was diagnosed with a subdural hemorrhage, fractures of the third through seventh ribs on the right, a transverse process fracture at the L1 level, and a right frontal contusion.  R. 375.  The trauma unit subsequently added the additional diagnoses of traumatic brain injury and subdural hematoma.  Alamo was discharged on August 27, 2012, with instructions to follow up with the Trauma Clinic at Hartford Hospital.  R. 377.

Alamo was seen at the Trauma Clinic on September 5, 2012 and September 12, 2012.  On both occasions, Alamo complained of continued pain and was provided medications.

The next medical record is from February 10, 2014.  Stipulation of Facts at 5.

Alamo was seen on February 10, 2014, at First Choice Health Centers by APRN Brittany Enz.  R. 409–411.  She noted that Alamo was homeless and was recently approved for medical insurance.  <u>Id.</u>  She further noted a history of traumatic brain injury and back pain.  She ordered spinal X-rays, which were taken on February 10, 2014.  The radiologist concluded that the X-rays showed "[n]o evidence for acute injury or significant degenerative change.  Mild curvature to the lower thoracic spine.  Sacralization of L5 bilaterally which could be the source of chronic pain."  R. 416.

Alamo returned to APRN Enz on February 17, 2014.  He continued to complain of pain and was prescribed medication.  APRN Enz also referred Alamo to pain management, MRI testing, and physical therapy.  R. 407.

On February 24, 2014, Alamo underwent MRI testing.  The cranial MRI was interpreted as unremarkable.  R. 412.  The lumbar MRI noted that "there may be sacralization of L5 seen on the axial sequences" and, at L4-5 "[t]here is a disk desiccation and a mild annular disk protrusion with a small central annular tear and/or contained extrusion."  R. 414.

Alamo was seen again by APRN Enz on March 18, 2014.  R. 422–423.  APRN Enz changed Alamo's prescription after Alamo complained that his medication was ineffective.  APRN Enz noted that she would complete the disability paperwork and noted the importance of a functional capacity evaluation.  She referred Alamo to Easter Seals to complete this evaluation.  At a follow up appointment on April 8, 2014, APRN Enz noted that Easter Seals was unable to complete the evaluation.  R. 420.  She further noted that she would help "in any ways [sic] I could" with Alamo's disability application.  R. 421.

Alamo returned to APRN Enz on July 24, 2014, and August 21, 2014.  R. 448, 446.  At the July 2014 appointment, Alamo informed APRN Enz that he failed to attend a neurology appointment at the UCONN Health Center.  APRN Enz urged Alamo to reschedule the appointment.  APRN Enz also referred Alamo to "Pain Medicine" due to Alamo's chronic pain.  R 447.

Alamo was seen by Dr. Qassem Kishawi at the Woodland Anesthesiology Pain Management Center of the St. Francis Medical Center on September 8, 2014.  Alamo

complained to Dr. Kishawi of severe low back pain. On examination, Dr. Kishawi found Alamo to be in "moderate distress." R. 461. He further noted that "[e]xam of the lower extremities for motion, sensory, reflex, vascular exam and range of motion is otherwise unremarkable." R. 461. Dr. Kishawi noted that Alamo suffers from "lumbar spinal stenosis" and ordered a lumbar epidural steroid injection. R. 462.

During this time, Alamo attended three physical therapy sessions at Mt. Saini Center for Rehabilitation/Sports. R. 459. Alamo was initially evaluated on September 4, 2014. The medical diagnosis was "sacralization of the lumbar vertebra" and the therapy diagnosis was "decreased active [range of motion in the] lumbar spine, spasm in the low back region, difficulty with IADL [independent activities of daily living]." R. 459. The record further noted that Alamo "still has difficulty in bending in all directions in the lumbar spine." It was also noted that Alamo had missed most of the physical therapy sessions; he was therefore discharged from physical therapy on October 20, 2014.

Alamo returned to APRN Enz at First Choice on September 23, 2014, and October 23, 2014. R. 444, 442. In these appointments, Alamo discussed cortisone injections, physical therapy, and pain management at St. Francis. Despite this treatment, Alamo continued to complain of back pain. Id. Physical examinations were notable only for "lumbar pain and limited range of motion." Id.

When Alamo returned to First Choice on December 16, 2014, he was seen by Dmitry A. Drapach, D.O. R. 440. Dr. Drapach noted that physical examinations reflected no changes from the prior visit. Alamo continued to complain of pain, and Dr. Drapach adjusted his medications. Id.

On February 23, 2015, Alamo was seen by a neurologist at the UCONN Health Center.  R. 463.  In the consultation, Alamo complained of headaches and chronic back pain. The reporting physician noted that he would follow up after a cranial MRI.  The report noted that Alamo had the correct medication to treat his headaches and that he would not make changes until after an MRI.  The report concluded "[b]ackache management per primary care."  R. 465.

The report from UCONN Health Center is the last contemporary medical chart note in the record.  Stipulation of Facts at 5.

The Record contains a May 23, 2016 letter from Torise Baker, Alamo's full time care-taker.  She reported that Alamo requires constant supervision and suffers from mood swings.  R. 374.

Furthermore, there is a July 6, 2016 letter from Wendy Epps, M.Ed, LADC.  R. 467.  Epps had provided therapy services to Alamo since August 2014.  Epps reported that Alamo suffers from PTSD and recommended that Alamo seek medical attention to address these issues.  R. 467.

The record also contains reports from two examining physician consultants and four non-examining consultants.  At the request of the State Agency, Alamo underwent two examinations.  On April 26, 2014, Dr. Andrew B. Pleshkevich, Ph.D., conducted a psychological examination.  Dr. Pleshkevich noted that Alamo's affect "was depressive and he appeared to be in noticeable pain."  R. 426–427.  Alamo's score on the Mini-Mental States Exam indicated no impairment.  R. 427.  On the WAIS-IV test, Alamo demonstrated a Full Scale IQ of 89 (low average).  Although Alamo scored Average or

Low Average in most categories, Alamo showed severe impairment on a subtest requiring him to repeat numbers, a result consistent with traumatic brain injury.  R. 430.

On June 10, 2014, Dr. Yacov Kogan performed a medical consultative examination.  Except for Alamo's report of "tenderness to palpation . . . from L1 to S1" the physical examination was entirely unremarkable.  Stipulation of Facts at 13.  Dr. Kogan diagnosed Alamo with chronic back pain, chronic tension-type headaches, intermittent blurred vision and light-headedness, and depressive mood.  R. 434.  He noted that some work-related activities involving sitting, standing, walking, bending, lifting, carrying, and reaching would be mildly limited; work-related activities involving speaking, comprehending, remembering, and carrying out instructions would not be limited.  R. 434.

The record also includes two non-examining medical consultants and two non-examining psychological consultants.  On July 15, 2014, Dr. Lawrence Schaffzin, a state agency medical consultant, reviewed the evidence and assessed that Alamo could lift and/or carry up to twenty pounds occasionally and ten pounds frequently.  R. 106.  He further opined that, during the course of an eight-hour work day, Alamo could sit, stand, and/or walk for about six hours each.  R. 106.  Dr. Papntonio, a State agency medical consultant, reviewed the evidence of record on September 29, 2014, and made the same findings.  R. 133.

Dr. Theresa Harris, a State agency psychological consultant, reviewed the evidence of record on May 5, 2014.  R. 103–05, 108–10.  In her residual functional capacity ("RFC") assessment, Dr. Harris assessed moderate limitations in maintaining attention and concentration for extended periods of time, completing a normal workday

and work week without interruptions from psychologically-based symptoms, and responding appropriately to changes in the work setting. R. 109. Dr. Leveille reviewed the evidence of record on September 3, 2014 and made similar assessments. R. 135.

B.   Procedural History

Alamo applied for Disability Insurance Benefits and Supplemental Security Income Benefits on February 21, 2014. The applications were denied by notices dated July 16, 2014. R. 142–50. Alamo filed a request for reconsideration and his request was denied by notices dated October 20, 2014. R. 154–160. Alamo requested a hearing before an Administrative Law Judge ("ALJ") on November 23, 2014. R. 161.

That hearing took place before ALJ John Noel on June 17, 2016. ALJ Noel heard Alamo's testimony and also heard testimony from a vocational expert. On August 31, 2016, the ALJ denied Alamo's claim. R. 17–37.

The ALJ found that Alamo has the severe impairments of degenerative disc disease in the lumbar spine, organic brain disorder and affective disorder. The ALJ found that Alamo's headaches were "non-severe." R. 23. The ALJ also found that Alamo has the residual functional capacity to perform light with some limitations. R. 27. Additionally, the ALJ found that Alamo can deal only with routine changes in the work setting. He found that Alamo is restricted to performing work involving simple routine tasks and that use of judgement is limited to simple, work related decisions. R. 25. He further found that Alamo is "unable to perform work on a team with co-workers and can only tolerate occasional contact with the general public." Id.

Based on the testimony at the hearing of the vocational expert, the ALJ found that occupations exist in substantial numbers in the national economy that Alamo was capable of performing.  R. 31.

On September 9, 2016, Alamo filed a Request for Review by the Appeals Council.  On September 25, 2017 the Appeals Councils denied Alamo's Request for Review.  R. 1–5.  Alamo subsequently filed this appeal.

## III.  STANDARD OF REVIEW

A decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards.  See 42 U.S.C. § 405(g).  "Substantial evidence" requires "more than a mere scintilla of evidence.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

## IV.  DISCUSSION

Alamo raises three errors: (1) that the ALJ failed to adequately develop the administrative record, Plaintiff's Memorandum in Support of Motion to Reverse the Decision of the Commissioner ("Pl.'s Mem.") (Doc. No. 27-2) at 1, (2) that the ALJ's Step Five findings were insufficient, id. at 15, and (3) that the ALJ insufficiently evaluated plaintiff's claims of pain, id. at 25.  The court addresses each of these arguments in turn.

### A.    Adequate Development of the Record

An ALJ in a social security benefits hearing has an affirmative obligation to develop the record adequately.  See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999).

The duty exists "even when . . . the claimant is represented by counsel." Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must himself affirmatively develop the record' . . .") (quoting Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)). In developing the record, the expert opinions of a treating medical professionals are of particular importance. See Hallet v. Astrue, No. 3:11-cv-1181, 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012); Ayer v. Astrue, No. 2:11-CV-83, 2012 WL 381784, at *3 (D. Vt. Feb. 6, 2012) (remanding to the ALJ "given the ALJ's failure to request medical opinions from any of Ayer's treating providers . . . which resulted in a substantial gap in the record").

Whether the ALJ has satisfied this duty to develop the record is a threshold question. Before determining whether the Commissioner's final decision is supported by substantial evidence under section 405(g) of title 42, "the court must first be satisfied that the ALJ provided plaintiff with 'a full hearing under the Secretary's regulations' and also fully and completely developed the administrative record." Scott v. Astrue, 09-CV-3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (quoting Echevarria, 685 F.2d at 755).

Alamo asserts that the ALJ failed to adequately develop the record in several respects: (1) he failed to include the complete medical records relating to his hospitalization at Hartford Hospital, Pl.'s Mem. at 3, (2) he failed to seek additional evidence from Dr. Qassem Kishawi of the Woodland Anesthesiology Pain Management Center of the St. Francis Medical Center, id. at 4, (3) he failed to include in the record any evidence after February 23, 2015, id. at 5, and (4) he failed to seek medical source statements from Alamo's treating medical professionals, APRN Brittany Enz and Dmitry

A. Drapach, D.O., <u>id.</u> at 4–5.  While the court is not persuaded by all of Alamo's claims regarding how far the ALJ should have gone to develop the record, the court finds that remand is required, given the ALJ's failure to seek the additional records from Dr. Kishawi and request medical opinions from any of Alamo's medical sources: the failure to do so resulted in a substantial gap in the record.

With respect to Dr. Kishawi, the record indicates that Dr. Kishawi began treating Alamo in September 2014 for chronic pain related to lumbar spinal stenosis.  R. 460.  The record before the ALJ contained a single record from Dr. Kishawi – Alamo's initial evaluation.  <u>Id.</u>  During the hearing, Alamo's non-attorney counsel informed the ALJ that the 2016 records from Dr. Kishawi's pain management center were missing.  R. 50.[1]  The ALJ characterized these missing record as "very important to have" and instructed Alamo's non-attorney counsel to submit the evidence within three weeks.  R. 50, 83.  Ultimately, the record before the ALJ failed to include any additional records from Dr. Kishawi or St. Francis.

The Commissioner asserts that the ALJ fulfilled his duty to adequately develop the record by granting three weeks to obtain additional evidence from Dr. Kishawi and advising Alamo's counsel to inform the ALJ if he had any difficulty obtaining these records.  Defendant's Memorandum in Support of Support of Her Motion for an Order Affirming Her Decision ("Deft.'s Mem.") (Doc. No. 28-1) at 6.  In support of this proposition, the Commissioner cites <u>Jordan v. Commissioner of Social Security</u>, 142 F. App'x. 542 (2d Cir. 2005).  However, in <u>Jordan</u>, the ALJ later contacted counsel to

---

[1] At the hearing, Alamo's non-attorney counsel informed the ALJ that "[w]e're missing records from St. Francis on Gillette Street."  R. 50.  The Woodland Anesthesiology Pain Management Center of St. Francis Hospital is located on Gillette Street.  Its address is 114 Woodland Street.

remind him that the sought-after evidence had not been received and that "a decision would be made on the existing record unless such evidence was timely submitted." Id. at 543. Here, there is no evidence that the ALJ followed up with Alamo's representative. An ALJ does not satisfy his duty to develop the record by providing more time and instructing counsel to ask for assistance in retrieving the evidence if needed. See Henneghan v. Berryhill, No. 3:16-CV-01507 VLB, 2018 WL 1316195, at *7 (D. Conn., 2018) ("In this case, the ALJ failed to take adequate steps to secure Dr. Camacho's records. The record indicates that the ALJ asked Plaintiff's representative to submit Dr. Camacho's records within 30 days, but the record does not indicate that the ALJ took any other steps to secure those records.").

The failure of the ALJ to seek the records of Dr. Kishawi constitutes a failure to adequately develop the record. These records would have assisted the ALJ in determining Alamo's functional capacity as it is limited by his spinal injury. The record before the ALJ demonstrated conflicting evidence on this very issue. Alamo contends that the back injury he suffered is a source of chronic pain that limits his ability to work. This claim is, to some extent, corroborated by reports form APRN Enz and Dr. Drapach, which reflect consistent complaints of pain. See R. 406–411; 420–424; R 436–R. 452. Alamo's complaints of pain are also, to some extent, consistent with the conclusions of an examining radiologist. See R. 416 (identifying sacralization of the fifth lumbar vertebra which "could be the source of chronic pain"). The examining consultative physician, however, found that Alamo's work-related activities are only "mildly limited due to lower back pain." R. 434. The missing records from Dr. Kishawi—an anesthesiologist treating Alamo's pain, R. 460—would have assisted the ALJ in

resolving this conflicting evidence. At the hearing, the ALJ acknowledged the significance of these missing records, and noted that they would be "very important to have." R. 83. Despite this recognition, however, there is no indication that the ALJ attempted to "fill [the] clear gaps in the administrative record." Rosa, 168 F.3d at 79. The failure to fill this clear gap constitutes harmful error. On remand, the ALJ should seek the missing records from Dr. Kishawi.

Alamo also contends that the ALJ failed to adequately develop the record because he did not seek medical source statements from Brittany Enz, APRN and Dmitry A. Drapach, D.O. This court agrees.

With respect to APRN Enz, the record before the ALJ makes clear that APRN Enz was a central figure in Alamo's treatment. APRN Enz provided care for Alamo from February 2014 through October 2014, treating Alamo on at least nine occasions. R. 406–411, 442–452. While the Disability Report filed on the same day as Alamo's disability application does not list APRN Enz by name, it does include the name and address of APRN Enz's clinic. R. 311. APRN Enz is listed as Alamo's doctor in August 2014 (in Alamo's Disability Report Appeal, R. 333) and as Alamo's primary care provider in December 2014 (in Dr. Drapach's treatment notes, R. 440). During APRN Enz's treatment of Alamo, APRN Enz expressed preoccupation with Alamo's disability application and a willingness to "help in any ways [sic] I could." R. 421. See also R. 423 ("I will complete disability paperwork. . ."). Despite the central role that APRN Enz played in Alamo's treatment, and despite her willingness to assist in Alamo's disability

application, there is no evidence that the ALJ sought a medical source statement from APRN Enz.[2]

The record also demonstrates that the ALJ failed to seek a medical source opinion form Dr. Drapach.  Dr. Drapach treated Alamo on at least three occasions, from December 2014 through February 2015.[3]  See R. 436–441.

A medical source statement from treating clinicians are of particular importance to a disability determination. See Hallet v. Astrue, No. 3:11-cv-1181, 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012) (concluding that, "[b]ecause the expert opinions of a treating physician as to the existence of a disability are binding on the factfinder, it is not sufficient for the ALJ simply to secure raw data from the treating physician" and remanding for further development of the record).  The failure of the ALJ to request opinions from a claimant's medical sources can constitute harmful error.  See Ayer v. Astrue, No. 2:11-CV-83, 2012 WL 381784, at *3 (D. Vt. Feb. 6, 2012) (remanding to the ALJ "given the ALJ's failure to request medical opinions from any of Ayer's treating providers . . . which resulted in a substantial gap in the record").

The Commissioner accurately notes that the Second Circuit has held that "lack of a [medical source] statement does not render the medical source's report incomplete." Deft.'s Mem. at 6 (citing Tankisi v. Comm'r of Soc. Sec., 521 Fed. App'x 29, 34 (2d Cir.

---

[2] The court notes that although APRN Enz is not a physician, she qualifies as a medical source. See, e.g., Ayer v. Astrue, No. 11-CV-83, 2012 WL 381784, *4 (D. Vt. Feb. 6, 2012) ("[T]he Court finds that the ALJ failed to properly develop the record with respect to opinions from Ayer's treating medical sources, including Nurse Practitioner Laurent.").

[3] The court need not decide whether Dr. Drapach qualifies as a treating physician based on the three instances in which he treated Alamo.  The ALJ's failure to seek a medical source statement from APRN Enz alone is sufficient to demonstrate a failure to adequately develop the record.

2013)).  However, in so holding the Court of Appeals emphasized two aspects of the record that are absent here.

First, the Second Circuit noted in <u>Tankisi</u> that the treating physician had provided an informal assessment of Tankisi's limitations, even though the record did not contain that physician's formal opinion of Tankisi's residual functional capacity.  <u>See</u> <u>id.</u>  "Some courts have therefore distinguished <u>Tankisi</u> and remanded for development of the record in cases where the treating physician's notes did not include an informal assessment of the claimant's RFC."  <u>Moreau v. Berryhill</u>, No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *8;  <u>see also</u> <u>DeLeon v. Colvin</u>, No. 3:15-CV-01106 (JCH), 2016 WL 3211419, at *4 (D. Conn. June 9, 2016) ("Records that are deemed to be complete without a medical source statement from a treating physician contain notes that express the treating physician's views as to the claimant's residual functional capacity, <u>i.e.</u>, the treating physician's views can be divined from their notes, and it is only a formal statement of opinion that is missing from the Record."); <u>La Torre v. Colvin</u>, No. 14-CV-3615 (AJP), 2015 WL 321881, at *12 (S.D.N.Y. Jan. 26, 2015) ("Unlike the ALJ in <u>Tankisi</u>. . . , ALJ Russak did not have even an informal assessment of La Torre's limitations on which to rely in making his determination."); Swanson v. Colvin, No. 12–CV–645S, 2013 WL 5676028, at *5 (W.D.N.Y. Oct. 17, 2013).

Alamo's case is similarly distinguishable from <u>Tankisi</u> on this basis.  The record contains progress notes from APRN Enz and Dr. Drapach for dates on which Alamo was treated at First Choice Health Centers.  <u>See</u> R. 406–411; 436–452.  These progress notes primarily discuss Alamo's symptoms, diagnoses, and treatment plan, including referrals to several other service providers.  <u>See</u> <u>id.</u>  They also include

observations based on general examinations including assessments of Alamo's general appearance, gait, and vital signs. However, the progress notes do not contain assessments of the scope of Alamo's work-related capabilities or limitations based on Alamo's back injury or brain injury. See id. "Thus, the record here contains neither a formal nor an informal RFC assessment by a treating physician on which the ALJ could have relied in making an RFC determination and is therefore less complete than the record in Tankisi." Moreau, 2018 WL 1316197, at *8.

Second, this case is distinguished from Tankisi because the record before the ALJ was not sufficiently extensive to negate the need for a treating source opinion on Alamo's RFC. In Tankisi, the court emphasized the "voluminous medical record" before the ALJ. Tankisi, 521 Fed. App'x at 34. No such voluminous medical record exists here. The complete medical record before the ALJ consisted of only 92 pages. See R. 375–465. The medical record is significantly smaller than—indeed, a fraction of—the medical records challenged in other cases as inadequate, but found to be sufficient. See, e.g, Sena v. Berryhill, No. 3:17-CV-912 MPS, 2018 WL 3854771, at * 14 (D. Conn. Aug. 14, 2018) (finding that 1,432 pages of medical records "constitute a voluminous record from which the ALJ could determine Mr. Sena's RFC.") (quoting Tankisi, 521 Fed. App'x. at 32); Mercado v. Berryhill, No. 16-CV-6087 PKC, 2017 WL 3328177, at *17 (S.D.N.Y. Aug. 3, 2017) (finding that the ALJ was under no further obligation to develop the record when the record contained "nearly 1,000 pages of medical records") (citing Tankisi, 521 Fed. App'x. at 34)). Despite the paucity of evidence in the medical record, there is no indication that the ALJ made an effort to seek medical source

statements form APRN Enz or Drapach, or to retrieve the missing records from Dr. Kishawi.

The Commissioner further contends that the medical source statements were not necessary because the opinions of the consulting physicians provided substantial basis upon which the ALJ relied when determining Alamo's residual functional capability as limited by his brain injury and spinal injury. Deft.'s Mem. at 7–9. In determining whether the opinions of these consulting physicians constitute a complete record, "the court must assess the quality and scope of these opinions, not merely the quantity." Moreau, 2018 WL 1316197, at *8. See Sanchez, 2015 WL 736102, at *6–*7 (noting that the consulting psychologist's statements, on which the ALJ appeared to rely, were equivocal); La Torre, 2015 WL 321881, at *12 (noting that the consultative examinations were insufficient to support the ALJ's RFC determination and, therefore, that the ALJ should have further developed the record).

The court concludes that the record is not sufficiently extensive to negate the necessity for the opinions of Alamo's medical sources. In particular, the record lacks substantial evidence that Alamo is capable of unskilled work. To conclude that Alamo is capable of unskilled work, the ALJ must rely on substantial evidence that he can be able to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting. 20 C.F.R. §§ 404.1521, 404.1545(c), 416.921, 416.945(c); SSR 85-15.

The ALJ based his determination that Alamo retained the RFC to perform unskilled work on evidence from Dr. Harris, Dr. Levielle, and Dr. Pleshkevich. Of these three sources, only Dr. Pleshkevich examined Alamo. Pleshkevich's statements are far

from conclusive and lack a robust RFC assessment. For instance, Pleshkevich's report notes that "Mr. Alamo's particular abilities were somewhat uneven" and simply characterizes these abilities as average or low average. R. 430. Plashkevich noted that Alamo exhibited at least one severe impairment consistent with traumatic brain injury, id; however, Pleshkevich failed to opine as how this impairment or any of the areas of low average functioning would affect Alamo's RFC. Dr. Harris and Dr. Levielle, the two non-examining state psychological consultants, provided clearer assessments of Alamo's RFC as limited by his brain injury. R. 108, 109, 134, 135. However, these opinions were based on the evidence of the record – a record this court has determined was incomplete. The lack of an RFC opinion from the examining psychologist, along with the lack of a medical source statement from a treating clinician, demonstrates that the ALJ failed to adequately develop the medical record as it pertains to Alamo's organic brain injury. See Ayer, 2012 WL 381784, at *6 (remanding for development of the record "[b]ecause the ALJ failed to seek an opinion as to [the plaintiff's] disability from her treating sources before relying on the opinions of non-treating, non-examining sources").

The ALJ based his determination that Alamo retained the RFC to perform a range of light work on evidence from Dr. Kogan, Dr. Schaffzin, and Dr. Papantonio. To conclude that Alamo is capable of doing light work, the ALJ must rely on substantial evidence that Alamo can lift at least 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). The full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday. Social Security Ruling 83-10. Once again, of the

three physicians relied upon by the ALJ, only one—Dr. Kogan—examined Alamo.  Dr. Kogan, like Dr. Pleshkevich, examined Alamo on one occasion.  R. 425.  But unlike Dr. Pleshkevich's report, Dr. Kogan included a medical source statement.  This medical source statement concluded that there are no range of motion deficits limiting Alamo's ability to perform most categories of light work.  R. 434.  Non-examining consultants reviewed Dr. Kogan's report and the evidence of record and concluded that Alamo could lift 20 pounds occasionally and sit, stand, and/or walk for six hours out of an eight-hour work day.  R. 106, 134.  The ALJ therefore concluded that Alamo was capable of light work. R. 27.

The Commissioner asserts that the reports from Dr. Kogan, Dr. Schaffzin, and Dr. Papantonio and consult notes of APRN Enz constitute an adequately developed record as it pertains to Alamo's spinal injury.  However, this court has noted that "the presence of a consulting examiner's report does not necessarily indicate that the record is robust enough to support the ALJ's decision without an opinion from a treating source."  Moreau, 2018 WL 1316197, at *8.  Unlike consultative physicians, treating clinicians have the "opportunity to develop an informed opinion as to the physical status of a patient" over the course of treatment, and are therefore "so much more reliable than that of an examining physician who sees the claimant once. . ." Hallett v. Astrue, No. 3:11-CV-1181 (VLB), 2012 WL 4371241, at *6 (D. Conn. Sept. 24, 2012).  "Some courts in this Circuit have therefore remanded for the ALJ to develop the record by obtaining a treating source opinion, even where the record contained the opinion of a consulting physician who examined the patient."  Moreau, 2018 WL 1316197, at *8 (citing Downes v. Colvin, No. 14-CV-7147, 2015 WL 4481088, at *14 (S.D.N.Y. July 22,

2015); <u>Sanchez</u>, 2015 WL 736102, at *6; <u>La Torre</u>, 2015 WL 321881, at *12).  In

<u>Downes</u> and <u>Sanchez</u>, the court specifically noted that the consulting physician

examined the claimant only once.  <u>See Downes</u>, 2015 WL 4481088, at *14; <u>Sanchez</u>,

2015 WL 736102, at *6 (noting that the consulting physician in <u>Tankisi</u> examined Taknisi

twice).  The Second Circuit has noted that "ALJs should not rely heavily on the findings

of consultative physicians after a single examination."  <u>Selian v. Astrue</u>, 708 F.3d 409,

419 (2d Cir. 2013); <u>Cruz v. Sullivan</u>, 912 F.2d 8, 13 (2d Cir. 1990) (noting that "a

consulting physician's opinions or report should be given limited weight" because

"consultative exams are often brief, are generally performed without benefit or review of

claimant's medical history and, at best, only give a glimpse of the claimant on a single

day").

     The ALJ's failure to seek medical source statements from APRN Enz and Dr.

Drapach constituted a failure to develop the record, the records of the State's consulting

physicians notwithstanding. The record establishes that APRN Enz and Dr. Drapach are

the two medical providers best situated to comment on the symptomatology of Alamo's

back injury and the impact it would have on Alamo's work.  Despite this, there is no

indication that the ALJ sought a medical source statement from either clinician.

Furthermore, there is no indication that the ALJ made any attempt to retrieve the

missing records from Dr. Kishawi.  This case is therefore quite unlike <u>Tankisi</u>, where the

absence of medical source statements did not justify remand because the ALJ had the

benefit of a "voluminous" record and "an assessment of Tankisi's limitations from a

treating physician."  521 Fed. App'x at 34.

In light of the foregoing analysis, the court concludes that the ALJ failed to adequately develop the medical record.  Furthermore, the court finds that there is not substantial evidence in the record supporting the ALJ's decision that Alamo could perform light, unskilled work.  On remand, the ALJ should seek medical source statements from Alamo's treating clinicians, including APRN Enz and Dr. Drapach, on this issue.  The ALJ should similarly seek the missing records from Dr. Kishawi of the Woodland Anesthesiology Pain Management Center at the St. Francis Medical Center.

B.     Step Five Analysis

Alamo next contends that the ALJ failed in his Step Five analysis.  At Step Five, the Commissioner must show that "there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience."  McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (citing Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008)); 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v)).  The ALJ may meet his burden "either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert."  McIntyre, 758 F.3d at 151.

The use of hypotheticals is one method of adducing the testimony of a vocational expert.  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence, and accurately reflect the limitations and capabilities of the claimant involved."  Calabrese v. Astrue, 358 F. App'x. 724, 276 (2d Cir. 2009) (summary order) (internal citations omitted).  To meet the burden of Step Five under the Social Security regulations, "[t]he Commissioner need show only one job existing in the national economy that [Claimant] can perform."

<u>Bavaro v. Astrue</u>, 413 F. App'x. 382, 384 (2d Cir. 2011) (summary order) (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b)).

Alamo contends that (1) substantial evidence does not support the RFC underlying ALJ's hypotheticals, Pl.'s Mem. at 23–25, and (2) substantial evidence does not support the ALJ's determination that the occupations identified by the vocational expert exist in significant numbers in the national economy, Pl.'s Mem. at 18–21.

As a preliminary matter, this court agrees with Alamo that the RFC underlying the ALJ's hypothetical is not supported by substantial evidence. The ALJ's hypothetical involved an individual with the RFC to perform light, unskilled work. R. 80. As discussed above, this RFC determination was made without a medical source statement from any of Alamo's treating clinicians. <u>See</u>, <u>supra</u> § IV(A). Furthermore, this RFC determination was made without the benefit of an adequately developed record. <u>Id.</u> On remand, the ALJ should ensure that any hypotheticals used in Step Five are based on substantial evidence from an adequately developed medical record.

Alamo next contends that substantial evidence does not support the ALJ's determination that the occupations identified by the vocational expert exist in significant numbers. Pl.'s Mem. at 18–21. Specifically, Alamo argues that the vocational expert provided no basis for the court to test the accuracy and reliability of his job incidence testimony, Pl.'s Mem. at 18; and, therefore, it was reversible error for the ALJ to rely on the testimony. This court agrees.

In the Second Circuit, an ALJ need not require the vocational expert "to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally." <u>McIntyre</u>, 758 F.3d at 152. The ALJ can "reasonably

credit" the vocational expert's testimony if such testimony is given "on the basis of the expert's professional experience and clinical judgment" and is not "undermined by any evidence in the record." Id.  The ALJ should also test whether the vocational expert's conclusions are consistent with the Directory of Occupational Titles (DOT).  Social Security Ruling 00-4p, 2000 WL 1898704 (Dec. 4, 2000); 20 C.F.R. § 404.1566 (noting that ALJs "rely primarily" on the DOT).  Because the DOT only defines jobs and does not provide specific information regarding the number of jobs available, the vocational expert must cite another source that allows the ALJ to test the accuracy or reliability of his conclusions.  See Hernandez v. Berryhill, No. 3:17-CV-368 (SRU), 2018 WL 1532609, at *15 (D. Conn. Mar. 29, 2018) ("By failing to identify any sources that he consulted, even generally, in determining the availability of jobs, the vocational expert's testimony did not comport with the Second Circuit's standard that he cite the sources used in coming to such a determination.").

Here, the vocational expert testified regarding the number of jobs that Alamo could perform given Alamo's limitations as characterized by the ALJ in hypothetical questions.  R. 81.  In responding to the ALJ's hypotheticals, the vocational expert provided six possible jobs, listed their DOT codes, and provided the number of available jobs for each listed position (both nationally and within Connecticut).  Id.  However, in responding to two of three ALJ hypotheticals, he did not identify any publication or source that he consulted in determining the number of available jobs, as is required.  See Hernandez, 2018 WL 1532609, at *15.  A vocational expert can base his opinion on professional experience.  See McIntyre 758 F.3d at 152.  In this case, the vocational expert relied upon his survey work when providing his opinion regarding the availability

of jobs within the "sit-stand option" of the ALJ's hypothetical. R. 81. He did not, however, provide a basis for his opinion regarding the availability of jobs as to the ALJ's light work hypothetical or sedentary hypothetical. Id. at 80, 81. Given this court's conclusion that the ALJ failed to adequately develop the record, see supra § IV(A), and failed to present a hypothetical supported by sufficient evidence, see supra § IV(B), this court will not conclude that it was error for the ALJ to rely upon the vocational expert's testimony. The court notes, however, that on remand, the ALJ should ensure that the vocational expert provides a sufficient basis for his opinions on all available jobs.

C.    Analysis of Alamo's Subjective Complaints of Pain

In light of the court's conclusion that the ALJ failed to adequately develop the record, see supra § IV(A), and lacked substantial evidence to support his Step Five determinations, see supra § IV(B), the court does not reach the merits of the parties' arguments with regard to Alamo's subjective complaints of pain. Nonetheless, the court recognizes that the ALJ appropriately considered Alamo's lack of treatment and poor compliance with treatment recommendations. R. 26, 27.

However, on remand the ALJ should more clearly consider Alamo's extensive history of pain and explicitly describe the weight that he afforded Alamo's subjective complaints of pain. In his Decision, the ALJ largely limits his discussion of Alamo's pain to a single paragraph. R. 26. He notes Alamo's history of alleging pain, the results of medical testing, and Alamo's history of nontreatment and noncompliance. R. 26. The ALJ's analysis, however, fails to appreciate the extensive nature of Alamo's history of pain. The record indicates that, on nearly every consultation with Alamo's treatment providers, Alamo complained of back pain. See R. 406–411, 436–452. Alamo's

treating clinicians did not discount his complaints of pain; rather, they prescribed pain medication to lessen his symptoms, referred him to pain management, and referred him to specialists for further testing. Notably, this testing confirmed the possibility of chronic pain. An examining radiologist concluded that Alamo suffered from sacralization of the fifth lumbar vertebra and that this "could be the source of chronic pain." R. 416.

Alamo's actions further suggest that his complaints were credible. Since his accident in 2012, Alamo has attempted to manage pain with medication. From February 2014 to February 2015, Alamo sought treatment at the pain management center at St. Francis, R. 460; received cortisone injections, id.; sought treatment with a chiropractic doctor, R. 436–441; and engaged (to a limited degree) with physical therapy, R. 459. The record before the court also indicates that Alamo continued to seek treatment at St. Francis through 2016, R. 50, evidence that is not included in the record. This case is therefore quite unlike those the Commissioner cites, cases in which the plaintiff had failed to seek any treatment during the relevant period. See Arnone v. Bowen, 882 F.2d 34, 39 (2d Cir. 1989) ("[T] the Secretary properly attributed significance to Arnone's failure to seek any medical attention during the crucial 1977–80 period."); Wilson v. Colvin, No. 6:16-cv-06509-MAT, 2017 WL 2821560 (W.D.N.Y. June 30, 2017), at *6 ("Plaintiff's allegations of debilitating pain were undermined by her failure to follow up on the multiple—relatively conservative—treatment options offered to her such as chiropractic treatment, physical therapy, and epidural injections.").

The ALJ's Decision does not make clear that he considered Alamo's pain and pain treatment, or that he based his decision on anything other than his selective reading of the record. On remand, the ALJ should more clearly consider the plaintiff's

extensive history of pain and explicitly describe the weight that he afforded Alamo's subjective complaints of pain.

## V.    CONCLUSION

For the foregoing reasons, Alamo's Motion to Reverse the Decision of the Commissioner (Doc. No. 27) is **GRANTED**.  The case is remanded to the Social Security Administration for further proceedings consistent with this Ruling.

**SO ORDERED.**

Dated at New Haven, Connecticut this 3rd day of September, 2019.


 /s/Janet C. Hall
—————————————————
Janet C. Hall
United States District Judge